UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

| | |
|---|---|
| GARY and ANITA PLUMLEY | PLAINTIFFS |
| VS.              CASE NO. 10-CV-4108 | |
| YOUNG WELL SERVICE COMPANY, INC. | DEFENDANT/ THIRD PARTY DEFENDANT |
| SERVICE KING MANUFACTURING, INC. | DEFENDANT/ THIRD PARTY PLAINTIFF/ INTERVENOR DEFENDANT |
| VS. | |
| YOUNG WELL SERVICE COMPANY, INC. | THIRD PARTY DEFENDANT |
| AGCS MARINE INSURANCE COMPANY, AS SUBROGEE OF YOUNG WELL SERVICE COMPANY, INC. | INTERVENOR PLAINTIFF |

**MEMORANDUM OPINION**

Plaintiffs Gary and Anita Plumley filed an Amended Complaint against Defendants Service King Manufacturing, Inc. ("Service King") and Young Well Service Company, Inc. ("Young Well Service") alleging negligence in allowing an employee to operate a vehicle in an unsafe condition. (ECF No. 43). Defendant Service King filed a Third Party Complaint against co-Defendant Young Well Service alleging that the employee was an agent or servant of Young Well Service at the time of the incident, and, therefore, any and all negligence should be imputed to Young Well Service rather than Service King. (ECF. No. 11). This matter is now before the Court on Service King and Young Well Service's cross-motions for Summary Judgment. (ECF No. 27 and 36). Both Service

1

King and Young Well Service have responded. (ECF No. 35 and 50). Both parties have replied. (ECF No. 50 and 52). The Court finds this matter ripe for consideration.

## BACKGROUND

In February 2010, Young Well Service contracted with Service King Manufacturing for the manufacture and purchase of an oil well drilling rig. In April 2010, Young Well Service requested that Service King deliver the completed rig from Service King's Stroud, Oklahoma location to Young Well Service's base of operations in Lewisville, Arkansas. Mike Goodman, Service King Sales Manager, testified that approximately 30% of the rigs manufactured by Service King are delivered in this manner rather than being picked up by the customer. (Deposition of Mike Goodman, ECF No. 28, Exh. D). Service King charged $1,400.00 for this delivery which was added to the outstanding balance for the manufacture of Young Well Service's rig.

Service King assigned the task of delivering the rig to Lewisville to Chris Morgan. Morgan was a Service King employee whose primary job for the company was delivering rigs to customers like Young Well Service who contracted for the service. (Deposition of Mike Goodman, ECF No. 28, Exh. D). Service King delivery drivers like Morgan were paid "partially hourly and partially by the mile" along with food, gas, hotel, and any other transportation expenses to be paid by Service King. (Deposition of Dixie Gordon, ECF No. 28, Exh. E).

In making preparations for delivery of the rig to Lewisville, Charie Bolen, Service King's sales assistant during the relevant time period, contacted Phil Keith, a Young Well Service representative, a few days before the delivery was to take place. Ms. Bolen informed Phil Keith that Young Well Service was responsible for obtaining insurance on the rig and transporting Chris Morgan to the airport after the rig was delivered. At this time, Phil Keith provided Bolen with the

delivery address: 211 Warren Street, Lewisville, Arkansas. (ECF No. 35, Exh. 6). Chris Morgan was later given Phil Keith's contact information to use as needed during delivery.

On April 15, 2010, upon completion of the rig and full payment by Young Well Service, Service King obtained the proper permits for delivery and temporary vehicle tags naming Young Well Service as owner of the rig. Exhibits submitted by Service King show an initial plan for Chris Morgan to depart Stroud at 7:00 A.M. on April 15 with the delivery to Lewisville, Arkansas taking approximately seven hours. (ECF No. 35-6). On three occasions during the delivery, Chris Morgan and Phil Keith communicated by cell phone. At some point during these phone calls, Phil Keith agreed to meet Chris Morgan one to two miles outside the city limits of Lewisville in order to show Morgan the way to a delivery location different from the 211 Warren Street location that had been pre-planned. This alternate location was approximately seven blocks from the 211 Warren Street location. Keith waited in a parking lot for Morgan to approach. Around 6:00 P.M., after seeing the rig approaching, Keith pulled out and motioned for Morgan to follow him. A short distance later at a 4-way stop, Phil Keith signaled to Chris Morgan to follow him in making a left turn. Rather than stopping and turning left at the stop sign, Chris Morgan proceeded through the intersection and, a short time later, ran through a red light, colliding with Plaintiff Gary Plumley's gravel truck. (ECF No. 49-3). Chris Morgan was killed as a result of the collision.

In regards to why Chris Morgan needed Phil Keith to lead him to an alternate delivery location, Young Well Service maintains that this change in plans was the result of Service King being late with the delivery and the 211 Warren Street yard having no room for the rig at that time of day (i.e. had the rig departed Stroud at 7:00 A.M. as planned, the rig would have arrived by 2:00 P.M. rather than 6:00 P.M. and could have been place in the 211 Warren Street yard). Phil Keith

has submitted an affidavit testifying to this fact and clarifying that the intended destination had always been the yard at 211 Warren Street. Service King contends that there was no specified delivery time and that the change in location was not due to a delay in delivery by Service King.

## STANDARD OF REVIEW

The standard of review for summary judgment is well established. Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 202 (1986). In deciding a motion for summary judgment, the Court must consider all the evidence and all reasonable inferences that arise from the evidence in a light most favorable to the nonmoving party. *See Nitsche v. CEO of Osage Valley Elec. Co-Op.*, 446 F.3d 841 (8th Cir. 2006). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). Genuine issues of material fact exist when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. A party opposing a motion for summary judgment "may not rest upon mere allegations or denials ... but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

DISCUSSION

Service King maintains that, at the time of the accident, Chris Morgan qualified as a "loaned servant" of Young Well Service due to the fact that a Young Well Service representative was giving him directions at the time the alleged negligent conduct took place. It follows that, if Young Well Service was Chris Young's employer at the time, any liability for the alleged negligence of Chris Morgan would be imputed to Young Well Service rather than Service King. Young Well Service maintains that Chris Morgan remained an employee of Service King exclusively, and that the actions by the Young Well Service representative did not transform Chris Morgan into a loaned servant of Young Well Service.

The loaned servant doctrine is well established under Arkansas law. Under the doctrine, a loaned or borrowed servant is an employee who is "lent or hired by his master to another for some special service, so as to become as to that service the servant of such third party." *St. Joseph's Regional Health Ctr. v. Munos*, 326 Ark. 605, 612 (Ark. 1996). This third party or "special employer" will be responsible for negligent acts of the loaned employee if the employee is, at that specific time, engaged in the business of the special employer and the special employer "has the right to control and direct [the employee's] conduct." *Watland v. Walton*, 410 F.2d 1, 2 (8th Cir. 1969)(quoting *St. Louis, I.M. & S. Ry. Co. v. Yates*, 111 Ark. 486, 498, 165 S.W. 282, 285 (Ark. 1914)). The question of whether it was the general employer or the special employer who had control over the negligent employee is typically a factual question that must be determined by a jury. *Id.* at 3. However, "where all of the evidence is in one direction and there is no rational basis for reasonable minds to differ as to the status of the servant the issue is one of law for the court to resolve." *Id*.

The Arkansas Supreme Court has adopted Restatement (Second) of Agency § 220(2) (1958) which outlines the factors to be considered when determining whether an employer-employee or independent contractor relationship exists. *Aloha Pools & Spas, Inc. v. Employer's Ins. of Wausau*, 342 Ark. 398, 39 S.W.3d 440 (Ark. 2000); *D.B. Griffin Warehouse, Inc. v. Sanders*, 336 Ark. 456, 986 S.W.2d 836 (Ark. 1999). Many of these same factors can be useful in determining whether a person should be classified as the loaned employee of another at the time their negligent conduct occurred. Restatement (Second) of Agency § 227 (1958)("Whether or not the person lent or rented becomes the servant of the one whose immediate purposes he serves depends in general upon the factors stated in § 220(2) ... he can become the servant of another only if there are the same elements in his relation to the other as would constitute him a servant of the other were he not originally the servant of the first.). The relevant § 220(2) factors are as follows:

> (a) the extent of control which, by the agreement, the master may exercise over the details of the work;
> (b) whether or not the one employed is engaged in a distinct occupation or business;
> (c) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
> (d) the method of payment, whether by time or by the job;
> (e) whether or not the work is part of the regular business of the employer;
> (f) whether or not the parties believe they are creating the relation of master and servant[.]

The control factor is the single most significant factor in a loaned employee analysis. *St. Joseph's Regional Health Center v. Munos*, 326 Ark. 605, 934 S.W.2d 196 (1996). *See also Cash v. Carter*, 312 Ark. 41, 46, 847 S.W.2d 18 (1993).

> I.  Direction and control over Morgan

Service King sets forth the following list of actions by Phil Keith as evidence of Young Well Service's purported control over Chris Morgan:

6

> "Keith repeatedly communicated with the drill rig driver [Chris Morgan] by telephone about the delivery.
> Keith met the rig a couple miles out of Lewisville to lead him through town.
> Keith, with his pickup truck lights flashing, slowly led the drill rig toward town.
> Keith gave hand signals to the driver to turn.
> Keith agreed in advance to at least take the driver from Lewisville to Texarkana after the delivery."

(ECF. No. 52 at 2).

Young Well Service does not dispute any of these facts. However, they maintain that these actions by Keith do not amount to control. Young Well Service points to Chris Morgan's employment status with Service King, as well as Service King's control over the logistics of the trip as evidence that Service King maintained control over Chris Morgan for the entire duration of the delivery trip. The Court agrees with Young Well Service as to this control element.

It is undisputed that Chris Morgan was an employee of Service King who primarily made deliveries for the company. He was paid partially by the hour and partially by the mile by Service King, not by Young Well Service. While Service King maintains there is no evidence to show that they "organized" logistics such as food, gas, lodging, and the route to Lewisville, they offer no explanation as to who was responsible. Service King does not allege that Young Well Service organized lodging, paid for Morgan's gas, set Morgan's route from Oklahoma to Arkansas, etc. In fact, Dixie Gordon, an employee of Service King, testified that food, gas, hotel, and any other transportation expenses were customarily paid for by Service King. (Deposition of Dixie Gordon, ECF No. 28, Exh. E). Regarding the route taken up until the point Chris Morgan was just outside the city limits of Lewisville, it is not clear to the Court who was responsible for setting these directions. However, Service King has not alleged that Young Well Service had control over setting

7

this initial route.

Given these undisputed facts, the Court does not find that Phil Keith's actions as Chris Morgan entered the Lewisville city limits amount to the level of direction or control necessary to classify Chris Morgan as a borrowed servant of Young Well Service. While Keith acted as a "human G.P.S." of sorts, merely giving directions to a delivery driver for the few miles he has left on his delivery route is not direction and control in the loaned servant context. Keith was not controlling or supervising the manner in which Chris Morgan drove the rig. He was merely directing Morgan in a way that facilitated the delivery contract being completed.

The lack of direction or control exhibited by Young Well Service becomes even more clear when viewed alongside cases where control was found or where the question of control was left to be decided by a jury. In *Draper v. ConAgra Foods, Inc.*, 92 Ark. App. 220, 236 (Ark. Ct. App. 2005), the Arkansas Court of Appeals held that the issue of determining whether a delivery truck company was an employee or independent contractor of ConAgra Foods for tort liability purposes was a factual question for the jury. While the court of appeals addressed the control issue in an independent contractor versus employee context rather than a borrowed servant context, as mentioned previously, the same type of control analysis applies in either case.

In *ConAgra*, a truck driver employed by PST Trucking was making a delivery for ConAgra Foods when he collided with the vehicle of another driver. ConAgra maintained that PST Trucking and their truck drivers were not agents or employees of ConAgra, therefore, ConAgra was not liable for the driver's actions that allegedly caused the accident. The Court denied ConAgra's motion for summary judgment and found that a fact question existed as to the driver's employment status based upon these facts: (1) Virtually all of PST Trucking's business was done exclusively with ConAgra;

8

(2) ConAgra dictated when and where loads were to be picked up on a weekly basis; (3) ConAgra controlled how the loads (chickens) were to be handled by PST drivers in transit, and PST drivers were not allowed to exercise discretion; (4) the PST driver delivered roughly three loads a day, five days a week to ConAgra; and (5) the PST driver picked up his tractors, trailers, and other instruments at ConAgra's facility. *Id*. At 233. Even with all of ConAgra's involvement and control over PST drivers while they drove the delivery trucks, the Court stated that "evidence supporting an employer-employee relationship is minimal." *Id*.

Comparing the amount of control that Young Well Service had over Chris Morgan to the level of control that existed in *ConAgra* illustrates the fact that there is no rational basis for reasonable minds to differ as to who was the master of Chris Morgan for the entire duration of the delivery. By Service King's own admission, Young Well Service did not dictate a delivery schedule to Service King. Young Well Service did not have control over setting the initial route or the manner in which Chris Morgan performed his duties. What transpired just outside the city limits of Lewisville alone, without any other evidence that Young Well Service controlled, supervised, or dictated to Chris Morgan the manner in which he was to perform the delivery, is simply not sufficient to classify Morgan as a borrowed servant at the time of the accident.

II. Other Restatement Factors

Because the Court has held that the integral control element was not present in Young Well Service's dealings with Chris Morgan, it is not necessary to address the remaining § 220(2) factors at length. However, these factors also weigh heavily in favor of finding that Chris Morgan was not a borrowed-servant of Young Well Service.

First, Chris Morgan and Service King were clearly engaged in a distinct operation or

9

business set apart from Young Well Service. Service King is a manufacturer and distributor of mobile equipment for oil and gas operations. Young Well Service, an oil rigging company, was simply a consumer who purchased a rig from Service King to be used in their drilling operations.

Second, as previously mentioned, Young Well Service paid a one time fee to Service King directly for the delivery of the rig. Service King then paid Chris Morgan hourly and by the mile. This highlights the fact that Chris Morgan was an employee of Service King and, absent direction and control by Young Well Service, he remained so throughout the specific acts in question.

Third, this delivery of the rig to Young Well Service arguably was not in the regular course of Young Well Service's business. Contracting for the sale of new equipment costing hundreds of thousands of dollars, while necessary, was not an activity that Young Well Service regularly engaged in. In contrast, the manufacture, sale, and delivery of oil rigs were the primary services offered by Service King, and the delivery by Morgan was in the regular course of their business.

The above-mentioned factors, along with the element of direction and control, indicate that Chris Morgan never rose to the level of a borrowed servant of Young Well Service. We must recognize the distinction between (a) an employee of a primary employer effectively becoming an employee of a third-party for a limited period of time and (b) an employee following the instructions of a customer which are implicit in providing a particular service for that customer. Young Well Service was a customer who contracted for a delivery service. Providing driving directions that facilitated the completion of this service in the last few miles of the trip did not transform a buyer/provider relationship into an employer/employee relationship between Young Well Service and Chris Morgan.

CONCLUSION

For the reasons state above, the Court finds that Young Well Service Company's Motion for Summary Judgment against Gary and Anita Plumley and Service King  (ECF No. 27) is **GRANTED**.  Service King's Motion for Summary Judgment (ECF No. 36) against Young Well Service should be and hereby is **DENIED**.  Service King Manufacturing's claims against Young Well Service Company are **DISMISSED WITH PREJUDICE**.  Gary and Anita Plumley's claims against Young Well Service Company are also **DISMISSED WITH PREJUDICE**. An order of even date, consistent with this opinion, shall issue.

IT IS SO ORDERED, on this 17th day of October, 2011.

                                                  /s/ Harry F. Barnes
                                          Hon. Harry F. Barnes
                                          United States District Judge